FAHNESTOCK et al. v. UNITED STATES.
No. 49243.

United States Court of Claims.
Feb. 6, 1951.

John J. Costello, New York City, for plaintiffs. Rathbone, Perry, Kelley & Drye, and Messrs. Theodore Pearson and Arthur W. Siegrist, all of New York City, were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiffs, executors of the will of Harris Fahnestock, a resident of New York City, who died on October 11, 1939, sue for interest on a refund made to them of federal estate taxes. The question is whether or not a refund of $41,960.06 of estate taxes made to the plaintiffs by the Government was "based on the credit" which Section 813 of the Internal Revenue Code, 26 U.S.C.A. § 813, permits the taxpayer to take against federal estate taxes, for similar taxes paid to a state. If the refund was "based on the credit" Section 813(b) provides that it should not bear interest. If it was not so "based" the normal rule of Section 3771(a) allowing interest upon the overpayment of an internal revenue tax is applicable, and the plaintiffs are entitled to the interest for which they sue.

If one has overpaid his taxes, and is therefore entitled to a refund, it would seem to be possible, in any case, to look back through the return and the assessment and find out how it happened that he paid more taxes than he owed. And when one has found out how it happened, that would seem to give the answer as to what the overpayment, and the consequent refund, were "based on". When we look at the plaintiffs' return in this case, we find that they claimed a credit for estate taxes which they would have to pay to the State of New York which was even larger than the credit to which they finally became entitled. That would indicate that they would, if they persisted in claiming so much of a credit, underpay their federal taxes, and would certainly never get a refund "based on" such a credit.

The Commissioner of Internal Revenue proposed corrections in the plaintiffs' return, not with regard to the claimed credit for state inheritance taxes, for it was recognized that whatever those taxes turned out to be, they would be, and the credit would follow automatically. The Commissioner's proposed corrections concerned items which he contended should have been included in the taxable estate but were not. The plaintiffs and the Commissioner could not agree and the plaintiffs filed a petition in the Tax Court of the United States, Fahnestock v. C. I. R., 4 T.C. 1096, to get the differences decided. In that case the Commissioner stipulated with the plaintiffs that they had, in their return, included $133,874.60 in the net taxable estate which should not have been included. That indicated that unless the Commissioner could persuade the Tax Court that other items of at least that amount had not been, but should have been included in the estate, the plaintiffs would be entitled to a refund, since they had overpaid their tax. If it turned out that way, the refund which they would get would not, of course, be "based on" a credit for state inheritance taxes, nor have any relation to such taxes.

The litigation in the Tax Court proceeded. In view of the stipulation eliminating $133,874.60 from the estate as returned by the plaintiffs, the only matter left for litigation was an item of $323,282.99 which the Commissioner contended should have been, but was not, included in the taxable estate. The Tax Court decided against the Commissioner. The actual net result of

the litigation in the Tax Court was, then, a decision that the plaintiffs had in their return, overstated the net taxable estate by $133,874.60 and had overpaid their tax accordingly. The Tax Court directed that decision be entered under its Rule 50, 26 U.S.C.A. § 1111, which meant that a recomputation of the plaintiffs' taxes should be made in accord with the stipulation of the parties, and the Court's decision on the contested issue.

The parties were now in a position to advise the New York taxing authorities as to the amount of the taxable estate, and to accurately compute the New York tax and the federal credit of 80% of that tax. But the New York court order fixing that tax had not been entered, and the New York tax had not been paid. The computation under Rule 50, therefore, could not give the plaintiffs final credit for a state tax that had not been paid, hence the computation was stated, in effect, in the alternative. It said that, as things stood, the plaintiffs had underpaid their tax in the amount of $94,123.79, but that—

"In the event satisfactory evidence is submitted showing the payment of the credit of $136,083.85, the net estate tax liability will be $583,414.44 resulting in an overassessment and overpayment of $41,960.06."

The quoted language was as much a part of the Tax Court's decision as the first alternative was, and everybody concerned knew that the quoted language was the decision which would, in fact, take effect. The plaintiffs obtained an order in the New York Surrogate's Court fixing the state tax, paid it, presented their certificate of payment to the United States Commissioner of Internal Revenue, who refunded the $41,960.06 to the plaintiffs, without interest.

In summary, then, the facts are these. The plaintiffs made their return showing a net taxable estate $133,874.60 larger than it should have been, but claiming a credit for state taxes larger than they were ultimately entitled to. They paid their tax on the basis of that return. If one had foreseen the subsequent events at that time, he would have said, "You will get a refund of a part of the taxes you have paid with your return, because you have overvalued the estate by $133,874.60, but your refund will not be quite so large as it would otherwise have been, because you have taken credit for more state taxes than you will ultimately have to pay, because the state taxes which you estimate will be proportionately reduced by the subtraction of $133,874.60 from the value of the estate." Could one say, then, that the refund which the plaintiffs would get would be "based on the credit" for state taxes. On the contrary, their refund was going to be smaller than it would otherwise have been, because they had taken too large a credit for state taxes. So far as any change would be "based on the credit" for estate taxes, it would not be a refund, but a deficit, calling for a further payment.

The refund was based completely and entirely on the fact that the plaintiffs overstated the net taxable estate by $133,874.60 in their return, and paid their tax on the basis of that overestimate. The matter of the credit for state inheritance taxes had nothing whatever to do with the refund, except to reduce it below what it would otherwise have been. The only element in the case which even looks in the contrary direction is the one alternative in the computation made in the Tax Court, which was intended to show the plaintiffs' tax liability in the event, which nobody expected to happen, that they either refused to pay the state tax or having done so, neglected to present their certificate of payment and get the credit of 80% on their federal tax. Either course of conduct would have been a gross breach of the law and of the executors' fiduciary duty. The real decision of the Tax Court then was that, when certain things which were sure to happen had happened, the plaintiffs would be entitled to a refund of $41,960.06 because they had, in their return, and the payment accompanying it, overstated the net taxable estate by $133,874.60. That the Tax Court's decision of May 8, 1945 was intended by the court and understood by the parties to be merely a restatement of the alternatives stated in the computation under Rule 50, is shown by the fact that,

when the condition of the second alternative had been satisfied, the Commissioner, instead of collecting a deficiency of $94,123.79, made a refund to the plaintiffs of $41,960.06, without any change in the decision of the Tax Court.

We conclude that the provision of Section 813(b) denying interest on refunds based on credit for inheritance taxes paid to the state has no application to the plaintiffs' situation, and that they should recover interest on their refund.

Our attention has been called to the decision of the United States District Court for the Southern District of New York dated November 29, 1950, in the case of Guaranty Trust Company of New York v. United States, 95 F.Supp. 776, but we do not agree with that decision.

The plaintiffs are entitled to recover. Entry of judgment will be suspended to await the filing of a stipulation by the parties showing the amount due.

It is so ordered.

HOWELL, WHITAKER and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

I think the defendant's position is correct. A credit for State inheritance taxes is allowable only when the estate has established that such taxes have been paid and when claim has been filed therefor within the time prescribed by statute. The New York taxes were not paid until after the controversy over the net taxable estate had been settled with the Commissioner through the Tax Court. Therefore at the time the Tax Court made its determination, after giving effect to the reduction in the net estate of $133,874.60, there was a deficiency in the amount of the estate tax as determined by the Tax Court of $94,123.79. When thereafter proof of payment of the New York taxes was presented, a refund of overpayment for the first time became allowable. It became allowable solely because plaintiffs then became entitled to the credit for New York taxes. Previously there was a deficiency due; the allowance of the claim for credit extinguished the deficiency and entitled the plaintiffs to a refund of the balance.

In essence plaintiffs' argument seems to proceed on the theory that the credit for New York taxes must be considered as having been allowable from the beginning and that since the only adjustment made other than the adjustment in the amount of the claimed credit was a reduction in the net value of the estate, the overpayment was based on such reduction. The fallacy in this argument is that the credit was not allowable until the taxes were paid and proof thereof furnished to the Commissioner, which did not occur until after the determination by the Tax Court. When the return was filed, a tax liability was shown of $772,168.32 and a credit claimed of $146,793.82, which reduced the tax then payable to $625,374.50, which amount plaintiffs paid. However, the credit claimed was not then allowable. The regulations merely permitted plaintiffs to file a claim for credit "of an estimated amount of any such taxes for which the estate will ultimately be entitled to a credit," and that was what plaintiffs did. The New York taxes had not then been paid and proof furnished of the payment, nor had that occurred when the Commissioner audited the return and when the matter was before the Tax Court. The claim for credit did not become allowable until after the entry of the order of determination by the Tax Court.

After giving effect to the reduction in the net value of the estate which was agreed upon in the proceedings before the Tax Court, a tax liability of $719,498.29 was shown. Since the taxpayer had paid $625,374.50, there was then a deficiency as found by that court of $94,123.79. While the Tax Court recognized the potentiality of the allowance of the credit, that court also recognized, as it had to do, that the credit was not then allowable for the primary reason that the New York taxes had not been paid. When such taxes were paid and proof thereof presented an overpayment resulted. That overpayment was clearly based on the allowance of the credit for the New York taxes.

236

I can perceive no inequity to plaintiffs in the refusal to allow interest on such an overpayment for the reason that throughout the entire proceedings, by virtue of the grant of a privilege to claim the credit, plaintiffs were not required to make payment of the amount that would otherwise have been payable save for the credit, and that when the final determination was made by the Tax Court the deficiency and interest thereon were both extinguished and plaintiffs were merely given a refund of the excess remaining.

The cases of Pearson v. United States, 17 F.Supp. 527, 83 Ct.Cl. 624, and Morgan v. United States, 18 F.Supp. 1017, 85 Ct.Cl. 138, relied on by plaintiffs, involved entirely different statutory provisions under the Revenue Act of 1926 and can not in any sense be considered as controlling under the circumstances and under the statute with which we are concerned. Those cases had to do with a situation which arose under the Revenue Act of 1926 which made a retroactive reduction in estate tax returns in the case of estate taxes paid under the Revenue Act of 1924, and provided further that any excess of the tax should be refunded without interest. In denying recovery, the court made a comparison between the correct tax liability under the two acts which showed that when the correct tax liability was computed under the 1924 act it exceeded that computed under the 1926 act by the amount of the overpayments, and therefore no interest was allowable under the prohibition in that statute. The prohibition against allowing interest when refund was due to the credit of State inheritance and legacy taxes with which we are here concerned was not then a part of the law.

The conclusion which I have reached in this case is the same as that reached by the United States District Court for the Southern District of New York under the same statute with which we are concerned and under analogous facts in the case of Guaranty Trust Company of New York v. United States, 95 F.Supp. 776.

I would dismiss the petition.