**Dorothy B. EDINBURG, Joseph M. Edinburg**

**and**

**Bessie K. Braude, Executors of the Estate of Harry B. Braude, Deceased,**

v.

**The UNITED STATES.**

No. 347–77.

United States Court of Claims.

March 19, 1980.

Bruno Schachner, New York City, attorney of record, for plaintiffs.

Daniel Lavin, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge and DAVIS and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

■ This case, here on cross-motions for summary judgment, presents two questions relating to the payment and recovery of interest in connection with federal estate taxes: (1) whether interest is payable on a refund of estate taxes representing a credit for state death taxes the estate paid; and (2) whether the suit is timely insofar as it seeks a refund of interest the estate previously paid. We answer both questions in favor of the government. We therefore grant its motion for summary judgment and dismiss the petition.

I.

The plaintiffs, the executors of the estate of Harry B. Braude, filed an estate tax return in November 1960, showing a gross estate of $3,684,219 and deductions of $2,592,475. This produced a taxable estate of $1,091,744 and a gross estate tax of $361,480. The plaintiffs took against this amount a credit of $42,112, reflecting part of the death duties of $59,796 the estate had paid in 1960 to the Commonwealth of Massachusetts. The plaintiffs paid the net resulting estate tax of $319,368.

In November 1963, the Commissioner of Internal Revenue assessed a deficiency of $637,053.30. The deficiency resulted from an increase in the value of the gross estate, a reduction in the amount of deductions, and the elimination of the credit for state death duties because "no evidence of payment has been submitted." On March 6, 1964, plaintiffs paid the deficiency together with 6 percent interest thereon of $124,-958.44.

On January 17, 1966, plaintiffs filed a claim for refund. On September 9, 1974, the Commissioner allowed a refund of $200,159.19, consisting of taxes of $188,-122.94 and interest of $12,036.25. The Com-

missioner added to the refund interest of $45,949.73 and paid plaintiffs $246,153.92. While the refund claim was pending, plaintiffs in March 1973 paid $66,964.66 in inheritance taxes to the Commonwealth of Massachusetts.

The present suit was filed on June 20, 1977. It seeks $120,837.62, consisting of interest on the credit for state death taxes that had been allowed and refunded and a refund of a portion of the interest that the estate had paid in 1964 but for which a refund had been denied in September 1974.

## II.

A. Section 6611(a) of the Internal Revenue Code of 1954 provides that interest at 6 percent shall be paid "upon any overpayment in respect of any internal revenue law." Section 2011(c), however, contains an exception for refunds based upon a credit for state death taxes. Section 2011(a) provides for a credit against the federal estate tax for "the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State . . . in respect of any property included in the gross estate . . . ." Section 2011(c)(1)–(3) provides special periods of limitation for seeking such a credit and then states: "Refund based on the credit may (despite the provisions of sections 6511 and 6512) be made if claim therefor is filed within the period above provided. Any such refund shall be made without interest."

The words "such refund" refer to the "[r]efund based on the credit" in the prior sentence. The "credit," in turn, refers to the credit that section 2011(a) allows for "the amount of any estate, inheritance, legacy, or succession taxes actually paid" to a state. The question, therefore, is whether any part of the refund of the federal estate tax made to the plaintiffs in September 1974 was "based on the credit" that the estate received for the death taxes it had paid to the Commonwealth of Massachusetts.

The total amount of taxes refunded was $188,122.94. Of this amount, $61,362.28 represented the allowance of deductions previously disallowed. The balance consisted of $59,796 reflecting the death taxes the estate had paid to the Commonwealth of Massachusetts in December 1960 (of which the estate had claimed a credit on the estate tax return of $42,112, which the Commissioner had disallowed in 1963), and $66,964.66 reflecting the payment of additional death taxes to the Commonwealth in 1973 (for which no credit had been claimed on the estate tax return). Thus, $126,760.66 of the refund directly represented and therefore was "based upon" the credit to which the estate was entitled for the death taxes it had paid to Massachusetts. Under section 2011(c), that portion of the refund was to be "made without interest."

The Second Circuit reached the same conclusion in *Guaranty Trust Co. v. United States*, 192 F.2d 164 (2d Cir. 1951). There the Tax Court, based on a stipulation of the parties, had entered a small deficiency judgment against the estate. That judgment did not reflect a credit for state inheritance taxes that had not yet been paid. The stipulation provided that upon proof of such payment, the executor would be entitled to a credit for those taxes. When the executor filed such proof, "the Commissioner credited the state taxes against the federal gross tax liability, abated the $932.41 deficiency, plus interest of $443.04, and refunded the balance of $5,153.33, without interest, to the executor." *Id.* at 165. In upholding the denial of interest, the court said: "Therefore, we think it plain that the refund was 'based on a credit' and so within both the literal words and the policy of section 813(b), which expressly forbids the payment of interest on any such refund." *Id.*

Our conclusion is further supported by Rev.Rul. 61–58, 1961–1 Cum.Bull. 414, 417:

Conversely, if an adjustment of the credit for state inheritance taxes claimed on the return tends to increase the amount of any refund otherwise allowable, then that portion of the refund which, in final analysis, represents the increase in the refund due to the adjustment of the credit will not bear interest.

The ruling squarely covers this case, since the allowance of the credit for state inheritance taxes "increase[d] the amount of" the "refund" by $126,960 and that "portion of the refund" does not bear interest.

B. The plaintiffs contend, however, that *Fahnestock v. United States*, 119 Ct.Cl. 41, 95 F.Supp. 232 (1951), and two of our subsequent decisions compel the contrary result. We do not so read those cases.

In *Fahnestock*, the estate tax return had claimed a credit for state death taxes the estate had not yet paid. The Commissioner determined a deficiency on other grounds, which the estate challenged in the Tax Court. In a stipulation in that court, the parties agreed that the net estate should be reduced by $133,874.60, because the executors had overstated it by that amount. The Tax Court rejected the Commissioner's claim that the estate had improperly excluded one item. "The actual net result of the litigation in the Tax Court was, then, a decision that the plaintiffs had in their return, overstated the net taxable estate by $133,874.60 and had overpaid their tax accordingly." *Id.* at 48, 95 F.Supp. at 233–34.

In the ensuing recapitulation of the estate tax, which did not include the credit for state death duties, it was determined that the estate had a tax deficiency of $94,123.79. The recapitulation further provided that if the estate submitted evidence showing payment of estate taxes, there would be an overpayment of $41,960.06, and that the estate then would be entitled to a refund in that amount. The estate submitted that evidence and the Commissioner refunded $41,960.06 without interest. This court held that the estate was entitled to interest, ruling that the refund was not "based on the credit" for state taxes. It stated (*id.* at 49, 95 F.Supp. at 234):

The refund was based completely and entirely on the fact that the plaintiffs overstated the net taxable estate by $133,874.60 in their return, and paid their tax on the basis of that overestimate. The matter of the credit for state inheritance taxes had nothing whatever to do with the refund, except to reduce it below what it would otherwise have been.

The court thus viewed the refund as based solely on the overpayment of the estate tax that resulted from the overstatement of the size of the estate. It treated the credit for the state taxes as having reduced the amount of the refund. In the present case, on the other hand, the major portion of the refund resulted solely from the credit for the payment of the state taxes and thus was "based upon the credit."

The two other decisions—*J. P. Morgan & Co. v. United States*, 136 Ct.Cl. 748, 145 F.Supp. 927 (1956), and *Morgan Guaranty Trust Co. v. United States*, 149 Ct.Cl. 735, 277 F.2d 466 (1960)—merely followed and applied *Fahnestock*. In *J. P. Morgan*, the court in a one-paragraph opinion stated that the case "in all essential respects" was like *Fahnestock*, which it deemed controlling. In *Morgan Guaranty Trust* the estate claimed a credit for state death taxes it had prepaid by making a deposit with the state. The Commission initially assessed deficiencies against the estate, including but not limited to the disallowance of the credit for state death taxes. The estate filed a claim for refund of part of the estate taxes it had paid. The Commissioner determined that the estate was entitled to a credit for the state death taxes of $161,267.91 it actually had paid, which was $47,093.60 less than the credit it had taken on its estate tax return, as well as other reductions in the estate tax. The result was that the estate was entitled to a refund of $255,160.94. The Commissioner refunded that amount, but without interest on $161,267.91.

The court held that the portion of the refund representing the taxes paid to the state was not "based on" a credit for state taxes, because "[i]f there had been no adjustment of the Federal estate tax except the adjustment of the credit for State inheritance taxes, there would, of course, have been no refund at all." 149 Ct.Cl. at 738, 277 F.2d at 468. In other words, as in *Fahnestock* and *J. P. Morgan & Co.*, the court viewed the refund as based upon the other adjustments in the estate tax.

■ C. At oral argument plaintiffs contended that Congress intended the prohibition in section 2011(c) against the payment of interest to apply only where the sole issue in dispute is the size of the estate. Nothing in either the language of that provision or any legislative history to which we have been cited supports that view. To the contrary, the language is unqualified: "Any such refund ['based on the credit'] shall be made without interest." To whatever extent the denial of interest upon such a refund may be undesirable, as plaintiffs vigorously argued, that is a matter of legislative policy which, if it is to be altered, must be changed by Congress and not by us.

## III.

In 1964, in response to a deficiency assessment, plaintiffs paid the deficiency together with interest of $124,958.44. They filed a claim for refund of both items, which the Commissioner partially allowed on September 9, 1974. The Commissioner refunded interest of $12,036.25, thereby denying a claim for refund of the balance of the interest. The present suit, seeking a refund of part of the unrefunded interest, was filed on June 20, 1977, 33 months after the refund was denied.

■ A. Section 6532(a)(1) of the Code provides that "[n]o suit under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum shall be begun . . . after the expiration of 2 years from the date of mailing . . . of a notice of disallowance of the part of the claim to which the suit . . . relates." Section 7422(a) in turn provides for suits for recovery of any tax, penalty, "or of any sum alleged to have been excessive or in any manner wrongfully collected." The words "any sum," used as they are in conjunction with "tax" and "penalty," cover interest on a tax. Insofar as it seeks a refund of interest previously paid, the present suit seeks recovery of a "sum" "alleged to have been excessive or . . . wrongfully collected." Under section 6532(a)(1), therefore, the suit is time-barred

because not filed within 2 years after the Commissioner denied refund of the interest in September 1974.

B. The same conclusion follows under another statutory provision. Section 6601(a) provides for payment of interest on taxes due but not timely paid. Section 6601(e)(1) (formerly section 6601(f)(1)) states:

> Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

Under the broad language of the second sentence, the interest on the estate tax deficiency plaintiffs paid in 1964 was part of the tax for which the deficiency was assessed. The words "[a]ny reference in this title [the Code] (except subchapter B of chapter 63 . . .)" include the provisions of the Code dealing with estate taxes. Section 6601(e)(1) treats the interest that section 6601(a) imposes upon estate tax deficiencies as part of the tax. There is no reason why the treatment of interest as part of the tax under section 6601(e)(1) does not apply to the requirement in section 6532(a)(1) that a suit for recovery of "any internal revenue tax" must be filed within 2 years after the notice of disallowance. Section 6601(e)(1) cannot properly be limited, as the plaintiffs would limit it, to the provisions of the Code that govern the assessment, collection, and payment of taxes; the section speaks of "[a]ny reference in this title," which covers section 6532(a)(1).

We faced a similar question in *Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. 219, 454 F.2d 1379 (1972). The question there was whether the taxpayer's failure to file a timely claim for refund of interest it had paid on tax deficiencies barred its suit for recovery of the interest. The government relied on the provision in section 7422(a) barring a suit for refund of a tax for which a proper claim for refund had not

been filed. The court held that the suit was barred. Noting the provision of section 6601(f)(1) (now 6601(e)(1)) that "equates interest to a 'tax imposed by this title'" (197 Ct.Cl. at 225, 454 F.2d at 1381), the court stated that the design of the Code for "recovery of deficiency interest assessed and collected on a principal amount of tax thought by the Service to be owing . . is to assimilate it to the tax itself . .. For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax." 197 Ct.Cl. at 225–26, 454 F.2d at 1382.

In other words, the court applied the provision in section 6601(f)(1) that any reference in the Code to any tax also refers to interest, to the requirement in section 7422(a) that a proper claim for refund must be filed before a suit for recovery of any tax may be maintained. The result was that the failure to seek a refund of interest barred a suit to recover it. There is no convincing reason why the provision in the same section that a refund suit must be brought within 2 years after disallowance of the refund claim does not also apply to suits for recovery of interest.

## CONCLUSION

The plaintiffs' motion for summary judgment is denied, the defendant's motion for summary judgment is granted, and the petition is dismissed.