**ESTATE OF Dorothy B. PLUMB, Thomas J. Hubbard and Citibank, N. A., Executors,**

v.

**The UNITED STATES.**

**No. 401–80T.**

United States Court of Claims.

Jan. 13, 1982.

Alice Welt Cunningham, New York City, for plaintiff; Theodore A. Kurz, New York City, atty. of record; Debevoise, Plimpton, Lyons & Gates, New York City, of counsel.

Daniel Lavin, Washington, D. C., with whom was Acting Asst. Atty. Gen., John F. Murray, Washington, D. C., for defendant; Theodore D. Peyser, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

KASHIWA, Judge:

This case is before the court on cross motions for summary judgment. After careful consideration of the parties' submissions, and after oral argument, we grant plaintiff's motion in part and deny it in part.

The plaintiff, the Estate of Dorothy B. Plumb, filed a federal estate tax return on July 17, 1978. As of that date, plaintiff had fully paid its Massachusetts state death taxes of $3,384,910.50. In computing the state death tax credit provided by § 2011(a)[1] of the Internal Revenue Code, an error was made in computation. The executors of the estate multiplied the applicable state death tax credit percentage of § 2011(b) by the tentative tax shown on line 6 of the return. Instead they should have multiplied the applicable percentage by the amount of the taxable estate shown on line 3 of the return. As a result, the return reflected a credit for state death taxes of only $1,817,176 while the amount properly allowable was $3,058,499.60.

A letter claiming a refund for the overpayment of taxes caused by the computational error plus interest was filed with the Manhattan district office of the Internal Revenue Service on August 10, 1978. A formal claim for refund together with a revised estate tax return was filed shortly thereafter on August 17, 1978. Processing of the claim was delayed until the Service had conducted an audit of plaintiff's return. The audit resulted in a small adjustment to plaintiff's gross estate, reducing it by $152,249 to $22,295,874. There was a corresponding reduction in the state death credit sought by the plaintiff to $3,034,140. The audit was completed on March 20, 1979, and the refund made on September 17, 1979. The refund of $1,127,474 was made without interest. Plaintiff's suit seeks interest on the refund for the period July 17, 1978, to the present.

Section 6401(c) of the Internal Revenue Code defines an overpayment. It provides:

> An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

There is no question that plaintiff overpaid its federal estate tax by $1,127,474. It follows, of course, that refund by the Internal Revenue Service of that overpayment was proper.

Section 6611 of the Code provides a general rule that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under section 6621." Section 2011(c), however, provides an exception to this rule where a refund is "based on" the state death tax credit. Section 2011(c) provides in relevant part:

> The credit allowed by this section shall include only such taxes as were actually paid and credit therefor claimed * * *.
>
> *    *    *    *    *    *
>
> Refund based on the credit may * * * be made if claim therefor is filed within the period above provided. Any such refund shall be made without interest.

Thus, the primary issue before us is whether the $1,127,474 refund is "based on" the state death credit and thus within the § 2011(c) prohibition against interest.

---

1. Section 2011(a) provides:

"IN GENERAL.—The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent)."

Section 2011(b) provides limitations upon the credit granted by § 2011(a). That limitation depends upon the size of the adjusted taxable estate.

A series of cases decided by this court have delineated the parameters of § 2011(c). The first was *Fahnestock v. United States*, 119 Ct.Cl. 41, 95 F.Supp. 232 (1951). *Fahnestock* interpreted the predecessor to § 2011(c), § 813(b) of the 1939 Revenue Code.[2] After the *Fahnestock* plaintiffs had filed an estate tax return, the Commissioner assessed a deficiency. Plaintiffs successfully contested that deficiency in the Tax Court. As a result, the taxable estate was smaller than that originally claimed and therefore the state death tax credit claimed was also smaller. This court compared the state death tax credit allowable on the face of the first return filed with that which was finally allowed:

> * * * When we look at the plaintiffs' return in this case, we find that they claimed a credit for estate taxes which they would have to pay to the State of New York which was even larger than the credit to which they finally became entitled. That would indicate that they would, if they persisted in claiming so much of a credit, underpay their federal taxes, and would certainly never get a refund "based on" such a credit. [119 Ct.Cl. at 47, 95 F.Supp. at 233.]

Since the state death credit allowed on refund was less than that originally thought to be allowable, this court concluded the refund was not "based on" the state death tax credit. Section 6611 therefore mandated interest on the refund.

In *J. P. Morgan & Co. v. United States*, 136 Ct.Cl. 748, 145 F.Supp. 927 (1956), this court followed, with little discussion, the *Fahnestock* decision. *J. P. Morgan* was followed by our decision in *Morgan Guaranty Trust Co. v. United States*, 149 Ct.Cl. 735, 277 F.2d 466 (1960). In *Morgan Guaranty*, the executors of the estate overpaid their federal estate tax and in due course the overpayment of $255,160.94 was refunded. The Government paid interest on a portion of this but refused to pay interest on the amount equal to the state death credit un-

der the alleged authority of § 813(b). The *Morgan Guaranty* plaintiffs had prepaid their New York state death taxes. This court concluded under an analysis similar to that in *Fahnestock, supra*, that the refund was not based on the state death credit but on reductions made to the taxable estate. A *downward* adjustment in the allowable state credit had occurred. "If there had been no adjustment of the Federal estate tax except the adjustment of the credit for State inheritance taxes, there would, of course, have been no refund at all." *Id.* 149 Ct.Cl. at 738, 277 F.2d at 468. As in *Fahnestock*, the state death tax credit claimed on the original return was in excess of that finally allowed. We therefore held the refund was not "based on" the credit. Interest under § 6611(b) was awarded.

More recently, we decided *Edinburg v. United States*, 223 Ct.Cl. 1, 617 F.2d 206 (1980). In *Edinburg*, unlike the earlier cases, we held § 2011(c) applicable and denied interest on the refund. In *Edinburg*, a net increase in the taxable estate and the state death credit had resulted from the adjustments made by the Commissioner. The *Edinburg* plaintiffs had stated a taxable estate of $1,091,744 on their initial return. The Commissioner then assessed a deficiency of $637,053.30 which was paid by the plaintiffs. Subsequently, the Commissioner allowed a refund of $188,122.94 with interest only on the portion of the refund not thought attributable to the state death tax credit. In the resulting litigation, this court upheld that determination, stating "$126,760.66 of the refund directly represented and therefore was 'based upon' the credit to which the estate was entitled for the death taxes it had paid to Massachusetts." *Id.* at 5, 617 F.2d at 208. Although the *Edinburg* court did not clearly explain how it arrived at this, application of the test applied in both *Fahnestock* and *Morgan Guaranty* leads to this result. When a comparison is made between the initial *Edinburg* return and the final return on which the refund was based, there is an increase

---

**2.** The provisions of § 2011(c) first appeared in § 802 of the 1932 Code. These became part of § 813(b) of the 1939 Code and later § 2011(c) of the 1954 Code. Except for transitional language, the provisions have remained the same.

in the allowable state death tax credit. It follows, as the court concluded, that a portion of the refund was due to the increase in the state death tax credit. Under § 2011(c) no interest could be paid on that portion.

Turning to the instant case, an argument was presented here that apparently was not made to the *Edinburg* court. Plaintiff here has argued that a distinction must be drawn between those state death taxes paid contemporaneously with or prior to the filing of the federal estate tax return and those paid subsequently because of upward adjustments in the state tax liability. Plaintiff contends the statute was not intended to apply to situations where full payment of state death taxes was made prior to or contemporaneously with the filing of the federal estate tax return. This argument, we think, finds support in the legislative history.

■ Section 802 of the Revenue Act of 1932, ch. 209, 47 Stat. 169, was the predecessor to § 2011(c). Its history reveals the provision allowed for an extension of time to determine state death taxes and receive the credit. This came about because many states waited for a final federal estate tax determination before determining the state death tax.[3] The running of the federal statute of limitations might, in those circumstances, prevent the resulting federal refund. Congress wanted individuals who paid their state death taxes in such circumstances to still receive the state death tax credit. In enacting an extension of the statute of limitations, however, Congress was concerned that the portion the federal treasury ultimately retained might be exceeded by interest liability under the predecessor to § 6611. Thus, the statute provided that there would be no interest on refunds due to the state death tax credit. H.R.Rep.No. 708, 72d Cong., 1st Sess. 1, 45–46 (1932), *reprinted in* 1939–1 C.B. (part 2) 489–490; S.Rep.No. 665, 72d Cong., 1st Sess. 1, 48–49 (1932), *reprinted in* 1939–1 C.B. (part 2) 531–532. The legislative history indicates, therefore, the no interest limitation came about as a direct result of the Congressional intent to allow the credit even though state death taxes were paid *subsequently* to the federal estate taxes.[4] Since the limitation did not exist prior to this, it follows that the § 2011(c) prohibition against interest should not apply to individuals who have fully paid their state estate tax liability prior to or contempora-

---

**3.** The legislative history provides in pertinent part:

"Subsection (a) of this section amends subdivision (b) of section 301 of the Revenue Act of 1926. The changes are:

\* \* \* \* \* \*

"(3) An extension of the period for paying State death taxes and claiming credit from three to four years after the filing of the return.

"(4) A provision in substance allowing the estate *the entire period during which the case* is before the Board, and 60 days thereafter, to pay State death taxes and claim credit therefor. Many of the States have passed estate tax laws, designed to procure for the State the difference between 80 per cent of the Federal estate tax and the ordinary State inheritance taxes. In actual practice, the State tax authorities decline (in many cases, under the express provisions of State law, are unable) to determine the State estate tax until the Federal estate tax is fixed. If the estate files a petition with the Board, it may be very much longer than three or four years after the filing of the return before the Board or the courts to which appeals are taken render a final decision.

"(5) A provision to the effect that, if the estate procures an extension of time to pay the tax (on account of undue hardship), a similar extension is granted for paying State death taxes and claiming credit therefor.

\* \* \* \* \* \*

"The interest provision is designed to prevent the allowance of interest, accruing after enactment of the pending bill, on any refund due to the State death tax credit. In some instances, interest on the 80 per cent refunded would equal or exceed the 20 per cent which the Federal Government is permitted to retain." [S.Rep.No. 665, 72d Cong., 1st Sess. 1, 48–49 (1932), *reprinted in* 1939–1 C.B. (part 2) 531–532. *Accord,* H.R.Rep.No. 708, 72d Cong., 1st Sess. 1, 45–46 (1932), *reprinted in* 1939–1 C.B. (part 2) 489–490.]

**4.** *Congress may have been concerned people would take full advantage of the extended statute of limitations, delay in payment of state taxes, have full use of their money, and still receive interest from the federal government when state taxes were finally paid.*

neously with the filing of the federal estate tax return.[5]

Moreover, the rationale of our prior decisions, which we are bound to apply, *see, e.g., Gindes v. United States*, Ct.Cl., 661 F.2d 194, 201, requires that we reach this result.

▪ Under *Fahnestock* and its progeny, one must compare the greater of the state death tax credit claimed on the initial return and the state death taxes paid contemporaneously with or prior to the filing of the estate tax return with the amount of the credit finally allowed. If there has been a reduction in amount, the refund cannot be "based on" the state death tax credit. On the other hand, where the state death tax credit allowed on refund exceeds both the credit originally claimed and the amount of the state taxes paid at the time of filing the federal return, a portion of the refund will be "based on" the state death tax credit. In such instances § 2011(c) will prohibit interest on that portion of the refund. *Fahnestock* and *Morgan Guaranty* implicitly apply such an approach; *Edinburg*, although not expressly setting this test out, nonetheless demonstrates its application.

In *Edinburg*, the plaintiffs initially paid $59,796 in death duties to Massachusetts. A credit of $42,112 was claimed on the federal return for this payment of state taxes.[6] The Commissioner initially disallowed the credit claimed because no evidence of payment had been submitted. After adjustments were made to the federal return that increased the taxable estate, the plaintiff owed an additional $66,964.66 in death duties to Massachusetts and was al-lowed a state death credit of $126,760.66 on the federal return. The *Edinburg* opinion does not indicate whether the court looked to the credit claimed, the taxes initially paid to Massachusetts, or the amount of the credit initially allowed by the Commissioner to determine there had been an increase in the state death credit. In light of the arguments presented in the instant case, the proper starting point would have been the amount of taxes initially paid since these exceeded the credit claimed. In any event, use of any of these figures discloses the increase in the state death credit *Fahnestock* and *Morgan Guaranty* held critical for application of § 2011(c). The *Edinburg* opinion, in holding that a portion of the refund was "based on" the state death tax credit,[7] is entirely consistent with the earlier cases and the test we reaffirm today.

▪ In the present case, it is obvious the refund of federal estate taxes concerned a miscalculation of the state death tax credit. This does not mean, however, that the eventual refund was "based on" the credit within the meaning of § 2011(c). In light of our previous cases and the legislative history of § 2011(c), more than a mere numerical adjustment must occur before a refund is "based on" the credit. As we have set out, *a refund is "based on" the state death tax credit only where the credit allowed on refund exceeds the credit claimed on the original return as well as the aggregate state taxes actually paid contemporaneously with or prior to the federal return's filing. In short, a further payment of state taxes must be made subsequent to the filing of the original federal return.* The state death tax credit allowed on refund was

---

5. This is not contrary to our opinion in *Edinburg*. All we said there was that the legislative history did not reveal that § 2011(c) should only apply where the sole issue in dispute is the size of the estate. The issue being dealt with in this case was not before the court in *Edinburg*. Our analysis is supported by *Morgan Guaranty*, where state death taxes were paid prior to the filing of the federal estate tax return. Judge Whitaker, in his concurrence, concluded that the refund there was not based on the state death tax credit because of this prepayment. 149 Ct.Cl. at 739, 277 F.2d at 468.

6. The credit claimed was less than the amount of state taxes paid because of the limitations of § 2011(b).

7. It was not argued in *Edinburg* that § 2011(c) should not apply to the portion of the refund attributable to the $59,796 initially paid to the State of Massachusetts. The *Edinburg* court therefore properly did not consider this. We do not reach this issue since those are not the facts in the present case.

$3,034,140. Plaintiff had fully paid[8] its Massachusetts state death taxes of $3,384,910.50 when the original federal estate return was filed. That federal return claimed a credit of only $1,817,176. Thus, while the credit claimed on refund exceeds that claimed on the original federal return, it does not exceed the aggregate state taxes paid contemporaneously with or prior to the original federal return. It follows, within the meaning of § 2011(c), that the eventual refund was not "based on" the state credit. Plaintiff is entitled to interest as provided under § 6611(a).[9]

■ Statutory interest may only be paid from the date of overpayment until the date of refund on September 17, 1979. Although plaintiff requests interest up to and including the date of this judgment, this court has no authority to grant such payment. 28 U.S.C. § 2516 expressly provides:

> *Interest on claims and judgments*
>
> (a) Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof.

There is simply no statutory grant of authority to pay interest once a refund has been made, for at that time there is no longer an overpayment. See §§ 6401(c) and 6611(a).

Based on the foregoing, we conclude that § 2011(c) does not apply to the refund given in this case. Plaintiff is entitled to statutory interest under § 6611(b) for the period July 17, 1978, to September 17, 1979. To that extent, plaintiff's motion for summary judgment is hereby granted and defendant's cross motion is denied. As to plaintiff's claim for interest attributable to periods after September 17, 1979, defendant's cross motion for summary judgment is

hereby granted and plaintiff's motion for summary judgment is denied with that portion of the petition dismissed. The case is remanded to a trial judge for further proceedings under Rule 131(c).

DAVIS, Judge, dissenting in part:

I disagree with the major holding[1] for four reasons: (1) on its face the statutory language (denying interest) is clearly against taxpayer; (2) the legislative history is inconclusive at best; (3) this court has already held that we should apply the "unqualified" wording of the statute, leaving it to Congress to change any undesirable aspects of the existing legislation; and (4) no previous decision of this court calls for the majority's result.

1. Section 2011(c) says flatly that "any" refund "based" on the state tax credit "shall be made without interest." I.R.C. § 2011(c). There are no exceptions or limitations. We have uniformly held that a refund "based" on the state tax credit means that portion of the refund attributable to, resulting from, or representing the amount of state tax that has been claimed as a credit. See *Edinburg v. United States*, 223 Ct.Cl. 1, 617 F.2d 206 (1980); *Fahnestock v. United States*, 119 Ct.Cl. 41, 95 F.Supp. 232 (1951); *J. P. Morgan & Co. v. United States*, 136 Ct.Cl. 748, 145 F.Supp. 927 (1956); *Morgan Guaranty Trust Co. v. United States*, 149 Ct.Cl. 735, 277 F.2d 466 (1960). That judicial reading is the normal understanding of Section 2011(c). It is indisputable that, in that sense, the refund here was "based" on the credit; all (or almost all) of the refund was directly due to plaintiff's gross understatement in its federal return of the state death tax credit. The literal wording of the legislation blankets this case precisely.

---

**8.** This is not a situation where the estate made an error in its payment of state death taxes and as a result paid less than it should have to the state. It is also unlike the situation in *Edinburg* where over half of the state death taxes were not paid until 13 years after the initial federal estate tax return was filed.

**9.** Plaintiff also argues it is entitled to interest because of what it believes was the Government's unreasonable delay in processing its claim. Since we have granted the plaintiff interest under the authority of § 6611, we need not reach this issue.

**1.** I concur, of course, that no interest was due after the refund was made.

2. The legislative history does not, in my view, lead to the special reading of the statute now adopted by the court—that Section 2011(c), despite its unlimited wording, applies only to a refund based on a credit for state death taxes paid subsequently to the filing of the federal return, not to refunds based on a credit for state death taxes paid prior to or contemporaneously with the filing of the federal return. The history quoted in the court's opinion (*ante* at 1220, note 3) does mention the possibility of payments of state death taxes subsequent to and in the light of the federal return, but the Committee reports also say, broadly and without restriction, that the no-interest provision was "designed to prevent the allowance of interest * * * on *any* refund due to the State death tax credit" (emphasis added); the reports then go right on to say that "[i]n some instances, interest on the 80 per cent refunded would equal or exceed the 20 per cent which the Federal Government is permitted to retain." *See id.* Those latter statements seem to indicate that Congress refused interest because it felt that, in the process of making refunds due to erroneous state tax credits, the federal share could by wholly eaten—a prospect Congress did not relish.

I do not say that the legislative history is clear, one way or the other, but I do say that the history is at most inconclusive and ambiguous, and therefore cannot support a departure from the statute's own broad language.

3. In *Edinburg, supra,* our most recent state death tax credit case involving interest, we held that we should apply the "unqualified" terms of the no-interest provision as they are written. To the contention that the statute should not apply to the full extent of its words because of undesirable results, we said:

> * * * To whatever extent the denial of interest upon such a refund may be undesirable * * * that is a matter of legisla-

tive policy which, if it is to be altered, must be changed by Congress and not by us.

223 Ct.Cl. at ——, 617 F.2d at 210.

That principle controls here. If the denial of interest is thought inequitable, as it may often be, it is for the legislature to change the rule. Allowance of interest on refunds is obviously a matter of Congressional choice. One can be of two minds about an error as careless as that made by this taxpayer.

4. No prior opinion of this court (or any other) adopts or suggests .the present court's theory that section 2011(c) applies only to refunds of post-return state tax payments. By disregarding the contents of those opinions one can perhaps harmonize the end-results of all of the decisions with the current ruling. The court's opinion in this case does so by finding the newly-adopted principle either "implicit" in the previous decisions (although not mentioned or suggested there at all) or not raised by those taxpayers.[2] That kind of fine-tuning may be useful to distinguish earlier opinions said to look the other way, but it cannot be employed (as the court now does) as independent and affirmative support for a new theory. The new rule must thus rest wholly on the court's interpretation of the legislative history, and as I have said, I consider that far too rickety a foundation. If the impetus for the new interpretation is the possible unfairness of the no-interest provision, that postulate runs squarely counter to our approach in *Edinburg.*

---

**2.** Indeed, under the current rationale *Edinburg* would be decided differently as to the portion of the refund attributable to the $59,796 initially paid to Massachusetts before the federal return. The majority merely says that it was not there argued that the statute should not apply to that portion, and therefore the *Edinburg* court did not consider the issue. *Ante,* at 1221, note 7.