Samuel T. GINDES and Joan L. Gindes

v.

The UNITED STATES.

Edward H. KAPLAN

v.

The UNITED STATES.

Jerome A. and Deena L. KAPLAN

v.

The UNITED STATES.

Nathan SINROD, Trustee for the benefit of Edward H. Kaplan,

v.

The UNITED STATES.

Nos. 472–73 and 57–76, 473–73 and 58–76, 474–73 and 59–76 and 60–76.

United States Court of Claims.

Sept. 23, 1981.

Werner Strupp, attorney of record, Washington, D. C., for plaintiff.

Ellen C. Specker, with whom was Acting Asst. Atty. Gen. John F. Murray, Washington, D. C., for defendant; Theodore D. Peyser and Robert S. Watkins, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge:

These cases are before the court on cross motions for partial summary judgment. There is no issue of material fact. We hold in defendant's favor after hearing oral argument.

During his life, Charles I. Kaplan (Charles) participated in numerous business undertakings with others. According to a Stipulation of Facts filed by the present parties, these enterprises were actively engaged in the business of operating and managing, through independent property management firms, apartment house complexes, commercial office buildings, shopping centers, and other rental properties. The principal assets of these enterprises were, with only two minor exceptions,[1] depreciable realty on which substantial depreciation had been taken. Consistent with the active conduct of a business, these enterprises annually incurred substantial operating expenses. Each enterprise maintained its own books of account as a partnership or joint venture. Following regular audits, a certified public accountant prepared financial statements treating each enterprise as a partnership or joint venture. For purposes of the federal income tax, partnership returns were filed on a calendar basis in which allowances for depreciation and the operating expenses as well as the income generated were set out.[2] These practices apparently were followed consistently once each enterprise commenced business.[3]

---

**1.** Two of the 19 partnerships we discuss *infra* held only unimproved realty.

**2.** Under the scheme of Subchapter K of the Internal Revenue Code of 1954 (Code), 26 U.S.C. (I.R.C.) § 701 *et seq.*, partnerships are required to file informational returns but are not taxed on their income. Instead, each partner takes a distributive share of income or loss and of any separately stated items. Thus, the individual partner is taxed. Where a partnership interest is owned by an entity which is not itself subject to taxation, as for example another partnership or certain kinds of trusts, the distributive share is generally passed through the intermediate level without taxation. Ultimately, some person (whether individual or corporate) will receive the distributive share. Aberrations from the normal taxing pattern may occur due to the tiering, however, as where interposition of a trust may "trap" partnership losses. See, *e. g.*, I.R.C. §§ 652(a) and 662(a).

**3.** Of the 19 enterprises involved in this litigation, two date from the 1940's, four from the 1950's, eight from 1960 or 1961, and three from 1962 or 1963. The court has no information as to when the remaining two enterprises commenced business.

For convenience' sake, we refer to these enterprises as partnerships.

Taxpayers Edward H. Kaplan (Edward), Jerome A. Kaplan (Jerome), and Joan L. Gindes (Joan)[4] are the children of Charles and Mary Kaplan (Mary). In 1950 Mary established trusts for the benefit of Edward and Jerome (the inter vivos trusts). Nathan Sinrod and Charles were named as co-trustees. As of December 31, 1963, Charles had transferred a portion of his interest in seven of the partnerships to the inter vivos trusts.[5] Charles died testate on January 27, 1964. His will created, *inter alia*, trusts benefiting Edward, Jerome, and Joan (the testamentary trusts). The corpus of each testamentary trust was comprised of interests Charles held at the time of death in the 19 partnerships. These 19 included the seven partnerships listed in note 5, *supra,* in which interests had been given to the inter vivos trusts.

Charles' estate tax return was filed on April 27, 1965. The partnership interests held at death were included as assets of the gross estate, but the partnership interests transferred to the inter vivos trusts were not. Upon audit, the Internal Revenue Ser-

vice (IRS) determined in August 1967 that certain of the partnership interests held at the time of death had been valued too low[6] and that the partnership interests transferred to the inter vivos trusts should have been included in the gross estate. A statutory notice of deficiency was sent in January 1968.

In March 1968 the estate filed a timely petition in the Tax Court seeking a redetermination of the deficiency. In its petition, the estate contested only one of the new valuations, but asserted any estate inclusion of the interests transferred to the inter vivos trusts was incorrect. Eventually, the Government conceded the original valuation of the contested interest had been correct while the estate conceded inclusion of the interests transferred to the inter vivos trusts was proper. A stipulated decision to this effect was entered by the Tax Court in May 1969 (sometimes referred to hereafter as the 1969 inclusion or the 1969 stipulation).

Thereafter, plaintiffs apparently became aware that if a proper election was made by each partnership under I.R.C. § 754[7] and the regulations promulgated thereunder,[8]

**4.** Deena L. Kaplan and Samuel T. Gindes are parties in these actions only because each filed a joint return with their respective spouses, Jerome and Joan.

**5.** The partnership interests given by Charles to the inter vivos trusts were as follows:

| Partnership | % Interest owned by Edward Kaplan inter vivos trust | % Interest owned by Jerome Kaplan inter vivos trust |
|---|---|---|
| Chillum Road Shopping Center | 6.0 | 6.0 |
| Dupont Park Apartments | 2.78 | 2.78 |
| 4000 Massachusetts Avenue | 2.5 | 2.5 |
| 1000 Connecticut Avenue | 5.0 | 5 0 |
| Riddell Building Parking Garage | 5.0 | 5.0 |
| 1700 K Street, N W. | 2 5 | 2 77 |
| 1730 K Street, N.W | 7 5 | 7 5 |

**6.** The partnership interests reported in the 1965 return were valued as follows:

| Partnership | % Interest | Reported value | Corrected value |
|---|---|---|---|
| Chillum Road Shopping Center | 7.0 | $ 24,000 | |
| Dupont Park Apartments | 7.22 | 24,270 | $ 38,000 |
| 4000 Massachusetts Avenue | 10.0 | 225,200 | 275,000 |
| 1000 Connecticut Avenue | 7.5 | 191,040 | 250,000 |
| Riddell Building Parking Garage | 7.5 | 22,700 | |
| 1700 K Street, N.W. | 11.11 | 159,400 | 250,000 |
| 1730 K Street, N.W. | 7.5 | 125,802 | 200,000 |
| Berkshire Associates | 5.0 | 98,050 | |
| Cathedral Parkway Associates | 15 0 | 45,000 | |
| The Essex | 25 0 | 201,000 | 226,500 |
| 20th & M Streets | 12.69 | 190,350 | |
| 2401 Calvert St., N.W. | 20 834 | 31,250 | |
| 1760–64 K Street, N.W. | 20.0 | 17,200 | |
| Berkshire-Richmond | 50.0 | Worthless | 56,700 |

| Mall Development Associates | 25.0 | Worthless | 6,250 |
|---|---|---|---|
| Parkland Gardens | 12 5 | 28,500 | 42,000 |
| Garden Manor Apartments | 25.0 | 116,250 | |
| Hague Towers | 12.5 | 13,750 | |
| 3100 M Street, N.W. | 100.0 | 35,000 | |

**7.** I.R.C. § 754 provides as follows:

"If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in section 734 and, in the case of a transfer of a partnership interest, in the manner provided in section 743. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years. Such election may be revoked by the partnership, subject to such limitations as may be provided by regulations prescribed by the Secretary."

**8.** The relevant portion of Treas.Reg. § 1.754–1(b)(1), as amended in 1972, provides the manner of making the I.R.C. § 754 election:

"(b) *Time and method of making election.*
"(1) An election under section 754 and this section to adjust the basis of partnership prop-

each partnership could adjust its bases in its assets upward under I.R.C. § 743(b) to reflect the inclusion of each interest in Charles' gross estate.[9] With higher bases in the partnership assets, greater annual depreciation allowances would be generated by the partnerships and distributed under I.R.C. § 702 to the trusts holding the partnership interests. Thereafter, the trusts would pass on the higher depreciation deductions to the trusts' beneficiaries, Edward, Jerome, and Joan, for use on their personal tax returns.

No I.R.C. § 754 elections, however, were in effect on the date of Charles' death.

Moreover, no I.R.C. § 754 elections were made with the partnership returns for the period in 1964 in which Charles' death occurred.[10] See note 8, *supra.* The estate return as filed in 1965 included numerous partnership interests, and thus, the I.R.C. § 754 election would have been of benefit at that time. However, it was apparently only in 1969, when the partnership interests held in the inter vivos trusts were included in the gross estate, that plaintiffs realized additional depreciation could be claimed at the partnership level and passed ultimately to Edward, Jerome, and Joan as individuals.[11]

erty under sections 734(b) and 743(b), with respect to a distribution of property to a partner or a transfer of an interest in a partnership, shall be made in a written statement filed with the partnership return for the taxable year during which the distribution or transfer occurs. For the election to be valid, the return must be filed not later than the time prescribed by paragraph (e) of § 1.6031-1 (including extensions thereof) for filing the return for such taxable year (or before August 23, 1956, whichever is later). * * * "

Thus, as the partnerships were with but one exception calendar year taxpayers, the elections were required with the partnership returns due April 15, 1965, *i. e.*, the returns for the taxable period in which Charles' death occurred. The remaining partnership, Cathedral Parkway Associates, was changing at the time to a fiscal year ending September 30. Under I.R.C. § 442 and I.R.C. § 443, Cathedral Parkway Associates' return for the period covering Charles' death was due on January 15, 1965. Thus, under Treas.Reg. § 1.754–1(b)(1), its election was to be made at that time.

The taxpayers here, as did those in *Jones v. United States,* 213 Ct.Cl. 529, 553 F.2d 667 (1977), dispute the application of this regulation as amended in 1972 to Charles' 1964 death as unfairly retroactive and otherwise invalid.

**9.** I.R.C. § 743(b) and its cousin, I.R.C. § 734(b), provide exceptions to the general rule that transactions affecting the *partner's* basis in the partnership (known to practitioners in the field as the "outside basis"), such as partnership distributions or transfers of an interest, do not alter the *partnership's* bases in partnership assets (the "inside bases"). I.R.C. § 743(b) and I.R.C. § 734(b) may be two-edged swords, however, for if an I.R.C. § 754 election is in effect, those provisions may on appropriate facts require a *downward* adjustment to the inside bases and, thus, lower depreciation allowances. Not surprisingly, the election under I.R.C. § 754 (which brings both I.R.C. § 743(b) and I.R.C.

§ 734(b) into play) is styled an "optional election," to be made at the partnership's peril. Once made, the I.R.C. § 754 election is revocable only for business reasons and only with the Service's permission. *See* Treas.Reg. § 1.754–1(c).

The parties do not dispute that on the present facts a valid I.R.C. § 754 election would provide, through I.R.C. § 743(b), increased depreciation deductions to these taxpayers. Thus, we have not set out I.R.C. § 743(b).

**10.** Nine partnerships filed I.R.C. § 754 elections with their 1969 tax returns. These nine included six of the seven partnerships listed in note 5, *supra,* in which the inter vivos trusts held interests.

**11.** Although the Stipulation of Facts, petitions, and this record are hardly models of clarity, it appears some of the testamentary trusts filed schedules on their 1965, 1966, and 1967 fiduciary returns reflecting the 1965 gross estate inclusions and a presumed concomitant increase in the partnerships' inside bases per I.R.C. § 743(b). This was apparently done even though no I.R.C. § 754 elections were then in effect and even though the partnerships' depreciation schedules did not show this added depreciation. The benefits of the added allowances, however, were never passed to the beneficiaries. The testamentary trusts during this period apparently reflected the added allowances as net losses from the partnerships and did not pass those net losses on to the individual beneficiaries. If anything, the listing of this added depreciation in the fiduciary returns for 1965, 1966, and 1967 reinforces our conclusion *infra* that requiring the I.R.C. § 754 elections to be made by the close of the partnerships' 1964 taxable years is reasonable. Adequate information was apparently present in 1965 on which the partnerships could have determined the efficacy of the election. As the record is not precisely clear, however, we rest our decision *infra* only in part of this basis.

Thereafter, these plaintiffs filed refund claims for various years based on added depreciation allowances allegedly passed to them through the trusts. Edward filed refund claims for 1961, 1962, 1963, 1964, and 1965 on July 30, 1969; for 1966 on October 28, 1971; for 1967 on May 10, 1974; and for 1968 on October 17, 1974. Edward's refund theories were bottomed on larger personal depreciation deductions in 1964, 1965, 1966, 1967, and 1968. The larger deductions in 1964 and 1965 allegedly gave rise to net operating losses in those years which could be carried to 1961, 1962, and 1963, causing overpayments in the earlier years as well. Similarly, larger depreciation deductions in 1967 and 1968 allegedly generated net operating loss, investment credit, and foreign tax credit carrybacks which resulted in further claims for 1964 and 1966. Jerome filed refund claims for 1961, 1962, 1963, 1964, and 1965 on July 24, 1969 and for 1966, 1967, and 1970 on November 2, 1973. Joan filed a refund claim for 1961 on July 8, 1969; for 1964 on October 22, 1969; and claims for 1966 and 1968 on November 2, 1973. In his fiduciary capacity, Nathan Sinrod in May 1971 filed a refund claim alleging Edward's inter vivos trust had overpaid its 1966 taxes. The theories of Jerome's personal claims, Joan's personal claims, and the fiduciary claim were similar to those presented by Edward, *i. e.*, that larger depreciation allowances were available to the partnerships which could be passed to the trusts and ultimately, the beneficiaries. After the refund claims were denied or plaintiffs waived notice of denial, these petitions were filed. Consolidation occurred and cross motions for partial summary judgment followed. The cross motions are a commendable attempt to clear much of the legal underbrush from this controversy.

The parties are apparently in agreement that the literal language of I.R.C. § 6511 [12] bars Edward's and Jerome's claims for 1964. Their refund claims for that year were filed on July 30, 1969, and July 24, 1969, respectively, more than 3 years after April 15, 1965, when their 1964 returns were filed and the tax shown thereon paid.[13] As to Jerome's and Edward's claims for pre-1964 years based on a net operating loss carryback from 1964, the Code is clear that taxpayers have only a 3-year period, running from the due date of the 1964 return, in which to claim for the carryback years. I.R.C. § 6511(d)(2)(A). Thus, the claims based on the carryback from 1964 also appear barred. Similarly, any recovery by Jerome is limited by the literal language of I.R.C. § 6511(b)(2)(B) to the portion of the 1966 tax paid within 2 years of the refund claim, $1,219.36.[14]

**12.** In relevant part, I.R.C. § 6511(a) and (b)(1) provides:

"§ 6511. *Limitations on credit or refund*
"(a) *Period of limitation on filing claim*
"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.
"(b) *Limitation on allowance of credits and refunds*
"(1) *Filing of claim within prescribed period*
"No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period."

**13.** Jerome's and Edward's claims for 1964 (and related carryback years) do not appear to be the only claims the plaintiffs assert which are barred by I.R.C. § 6511. However, the parties have neither briefed nor argued other applications of I.R.C. § 6511 and we need not, for purposes of these cross motions, rule further.

**14.** I.R.C. § 6511(b)(2)(B) provides:

"(B) *Limit where claim not filed within 3-year period*
"If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."
Jerome filed his 1966 return on April 15, 1967. A deficiency for that year and interest thereon were assessed on June 4, 1971, totaling $1,919.68. The assessments were partially sat-

Moreover, even to the extent that I.R.C. § 6511 does not bar or limit these actions, the Government contends these petitions have further problems. Treas.Reg. § 1.754–1(b)(1), *supra*, requires, says the Government, that the I.R.C. § 754 election be made by the partnership "with the partnership return for the taxable year during which the distribution or transfer occurs." As the "transfer" of all interests included in Charles' estate occurred for federal tax purposes on Charles' death in 1964, the argument goes, only an I.R.C. § 754 election filed with each partnership return for 1964 could allow the I.R.C. § 743(b) adjustments. Thus, the Government concludes, once the partnerships failed to elect under I.R.C. § 754 in their returns for the year of Charles' death, no I.R.C. § 743(b) adjustments can be made based on that death, regardless of when actual inclusion within the gross estate results or when subsequent I.R.C. § 754 elections are made.

In reply, plaintiffs advance two general arguments. Plaintiffs argue that Treas. Reg. § 1.754–1(b)(1) as amended in 1972 should not apply to them or is invalid and that the doctrine of equitable recoupment excuses the failures to file timely refund claims and I.R.C. § 754 elections.

Plaintiffs assert a variety of theories why Treas.Reg. § 1.745–1(b)(1) is inapplicable or invalid. We considered and rejected these arguments in *Jones v. United States*, 213 Ct.Cl. 529, 553 F.2d 667 (1977). *Jones* of course binds us, *see, e. g., Alabama Hospital Association v. United States*, —— Ct.Cl. ——, 656 F.2d 606 at 612 (1981), and even if

it did not, we would similarly reject these arguments upon *de novo* consideration today. For example, plaintiffs assert that Treas.Reg. § 1.754–1(b)(1) as amended in 1972 is unfairly retroactive when applied to Charles' 1964 death. A former version, admittedly in effect in 1964, left unclear when the I.R.C. § 754 election was to be made. As *Jones* recognized, however, such an argument ignores I.R.C. § 7805(b), which provides that Treasury Regulations are to be retroactive absent a limitation on retroactivity. Retroactive regulations are clearly the rule under the Code, and as no limitation is provided within Treas.Reg. § 1.754–1(b)(1), we must apply it in that manner.

Plaintiffs also assert, as did their counterpart in *Jones*, that requiring the I.R.C. § 754 election with the next partnership return after a death allows inadequate time for an "informed" election. We leave aside other familiar examples when the Code requires elections before one knows with absolute certainty that the particular election will be of benefit. It is clear here, as it was in *Jones*, that adequate information was available on which each partnership could evaluate the benefits of an I.R.C. § 754 election. The partnership returns for 1963 disclosed that these partnerships held assets on which substantial depreciation had been taken. We observed in *Jones* that circumstance should have indicated the potential benefits of I.R.C. § 754 elections, and we think no differently today. We note further that the present partnerships had a considerably *longer* period [15] than did the

isfied by a credit of $700.32 (which arose April 15, 1971). Jerome filed a refund claim for 1966 on November 2, 1973. Thereafter, the balances of the assessments, $1,219.36, were satisfied by a payment of $1,470.66 on December 13, 1973. The overpayment of $251.30 was credited to Jerome's other tax liabilities.

Neither party has discussed whether the $700.32 credit should be considered paid against the 1966 deficiency when the credit *arose*, April 15, 1971, or when the deficiency was *asserted*, June 4, 1971. Assuming *arguendo* the date most favorable to the taxpayer, June 4, 1971, is correct, the credit of $700.32 was still not paid against the 1966 deficiency within 2 years of the November 2, 1973 refund claim. As to the $1,219.36 of the December 13,

1973, payment which was used to satisfy the 1966 deficiency, we note that payment to be *after* the 1966 refund claim was filed. Thus, strictly speaking, no tax was paid within the 2 years "immediately preceding" the refund claim. The Government, however, rejects this Draconian view of I.R.C. § 6511(b)(2)(B) and concedes Jerome may recover up to the $1,219.36 paid on December 13, 1973, against the 1966 taxes.

**15.** With the exception of Cathedral Parkway Associates, these partnerships had almost 15 months from Charles' death to elect. Cathedral Parkway Associates had just under 12 months to elect. *See* note 8, *supra*. The *Jones* partnerships had approximately 6 months.

*Jones* partnerships in which to decide on I.R.C. § 754. At most, the 1969 stipulation which included additional partnership interests within Charles' estate merely *increased* the benefits accruing to the partnerships (and these plaintiffs) from timely I.R.C. § 754 elections.[16] It is thus of no moment that plaintiffs say they were unaware the Internal Revenue Service would require the further inclusions in 1969.

Nor do we think the present plaintiffs are aided, any more than the *Jones* plaintiff was, by the subsequent I.R.C. § 754 elections filed in 1969 by nine of Charles' former partnerships. See note 10, *supra.* Both I.R.C. § 754, *supra* note 7, and Treas. Reg. § 1.754–1(a) are clear that such elections apply to all distributions of partnership property and to all transfers of partnership interests during the election year of the partnership and all subsequent years. The 1969 elections, therefore, can have no impact on the transfer of interests occasioned by the death of Charles, even as to the interests first included in 1969. The Code and the Regulations speak not of the year when *inclusion* occurs but, rather, of when the *transfer* of the interest takes place. Whatever vestiges of ownership Charles retained sufficient to cause inclusion in his estate after the partnership interests were placed in the inter vivos trusts, those vestiges of his ownership clearly terminated upon his death. Thus, within the meaning of I.R.C. § 754 and Treas.Reg. § 1.754–1(a), the latest the "transfer" of the interests held by the inter vivos trusts could

have occurred was upon Charles' death in 1964.[17]

■ Based on the foregoing, it would appear that because no I.R.C. § 754 elections were filed with the partnership returns for 1964, no I.R.C. § 743(b) adjustments can be made based on Charles' death. Plaintiffs however contend that as the Government required additional inclusions in Charles' estate in 1969, the doctrine of equitable recoupment allows them to now claim additional depreciation in years otherwise barred by I.R.C. § 6511. We reject this notion out of hand.

■ At one time it appeared that a broad scope should be accorded the doctrine of recoupment as a means of mitigating the abbreviated limitations period applicable to tax litigation. See *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). Nine years after *Stone v. White,* however, the Supreme Court held in *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), that the doctrine had a far more circumspect application to tax cases: [18]

\* \* \* The essence of the doctrine of recoupment is stated in the *Bull* case: "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." 295 U.S. 247, 262 [55 S.Ct. 695, 700]. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a

---

**16.** Indeed, as note 11, *supra,* discusses, at least some of the testamentary trusts filed schedules with their 1965, 1966, and 1967 fiduciary returns which apparently reflected additional depreciation attributable to an assumed I.R.C. § 743(b) adjustment in light of Charles' death and the *original* estate return.

**17.** Indeed, it might be argued based solely on I.R.C. § 754 and Treas.Reg. § 1.754–1(a) that the "transfer" occurred when Charles placed the interests in the inter vivos trusts. The Government does not make such an argument, no doubt based on Treas.Reg. § 1.743–1(a) which seems to limit "transfers" to dispositions by sale or exchange and to circumstances where the partner dies.

**18.** One possible explanation for the shift in direction taken by the Court lies with the passage during the intervening years of Code provisions specifically mitigating the effect of the limitations provisions. Those provisions, presently I.R.C. §§ 1311–1314, are among the most arcane and technical in the Code. Although not articulated in *Electric Storage Battery,* the Court might well have thought broad application of recoupment inappropriate once Congress detailed rather specific instances in which the limitations provisions could be set aside.

plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

The application of this general principle to concrete cases in both of the cited decisions is instructive as to the limited scope given to recoupment in tax litigation. *In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due.* In *Bull v. United States*, the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice—once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. In *Stone v. White*, likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees. Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts are the only ones in which it has been applied by this Court in tax cases. [*Id.* at 299–300, 67 S.Ct. at 272–273. Emphasis supplied; footnote omitted.]

The critical inquiry, of course, is whether a "single transaction or taxable event [has] been subjected to two taxes on inconsistent legal theories, * * *" and we have so held

in a succession of cases since *Electric Storage Battery* was decided. *See, e. g., Ford v. United States*, 149 Ct.Cl. 558, 276 F.2d 17 (1960); *Brigham v. United States*, 200 Ct.Cl. 68, 470 F.2d 571 (1972), *cert. denied*, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973); *Evans Trust v. United States*, 199 Ct.Cl. 98, 462 F.2d 521 (1972); *Wilmington Trust Co. v. United States*, 221 Ct.Cl. ——, 610 F.2d 703 (1979). *See also Ellard v. United States*, Ct.Cl. No. 351–80T (order entered July 28, 1981, order at 3–4). Plaintiffs' somewhat confused legal theory is that the 1969 inclusion is part of the same transaction as plaintiffs' non-deduction of added depreciation and has been inconsistently treated. Plaintiffs' contentions are wide of the mark. Plaintiffs' non-deductions stem from the failure of the partnerships to elect under I.R.C. § 754, not from the inclusions of assets within Charles' gross estate. Plaintiffs are clearly correct that there is a relationship between these elements, viz., a properly made I.R.C. § 754 election would have led to an I.R.C. § 743(b) adjustment based on inclusion within Charles' estate and ultimately greater depreciation deductions to these plaintiffs. But that is a far cry from labeling these as components of an integral tax event. Clearly what the *Electric Storage Battery* Court had in mind was the sort of double inclusion (wrongful inclusion within gross estate, proper inclusion in the estate's income) that occurred in *Bull v. United States, supra*, or the sort of double noninclusion (wrongful exclusion from income by beneficiary, proper exclusion from income by trust) that occurred in *Stone v. White, supra*, of a single item of income, *i. e.*, a separate and discernible fund which must either be included or not included. Mere relation, as occurs when elections may give rise to greater tax benefits, will not suffice, no matter how the equity-minded judge might otherwise feel. *See Wilmington Trust Co., supra* at ——, 610 F.2d at 713–714. *See also Ford, supra* 149 Ct.Cl. at 569, 276 F.2d at 23. We need not rest our denial of equitable recoupment on this basis alone, however. A second element which any par-

ty seeking recoupment must show is that there be inconsistency between the two treatments of the single event. Plaintiffs here can show no such inconsistency between the non-elections in the partnerships' 1964 returns (and plaintiffs' concomitant non-deductions) and the 1969 inclusion within Charles' estate. As we have set out earlier, *supra* note 9, partnerships have an *option* to elect under I.R.C. § 754 and need not do so. That option is a recognition, no doubt, that the I.R.C. § 743(b) and I.R.C. § 734(b) adjustments triggered by the I.R.C. § 754 election may require a *downward* adjustment to the partnership's bases in its assets and ultimately reduced depreciation deductions available for distribution. The 1969 inclusion is not inconsistent with the non-election but demonstrates merely that the partnerships made a bad choice. Once a taxpayer makes such choices, he usually must live with them. *E. g., Montgomery Coca-Cola Bottling Co. v. United States,* 222 Ct.Cl. ——, ——, 615 F.2d 1318, 1324 (1980). These non-elections are ones with which the partnerships, and ultimately these taxpayers, must abide. The Commissioner has not been inconsistent here.

▮ We conclude therefore that there was no single transaction which was treated inconsistently.[19] Equitable recoupment thus cannot excuse either plaintiffs' failure to file timely refund claims or the partnerships' failure to file timely elect under I.R.C. § 754 so as to make I.R.C. § 743(b) applicable to Charles' death. We so hold. So much of plaintiffs' petitions which claim refunds (on any theory) in years barred by I.R.C. § 6511 or which claim refunds (in any year) based on greater depreciation arising from Charles' death must be dismissed.

▮ Plaintiffs' further arguments are of but little merit. Plaintiffs now argue that these enterprises were not partnerships. Plaintiffs' theory is apparently that the

trusts owned the depreciable assets directly and thus under I.R.C. § 1014 would receive a step-up in basis as a result of inclusion of the assets within Charles' estate. The partnerships' failures to elect under I.R.C. § 754 would therefore be irrelevant. Plaintiffs could supposedly claim greater depreciation in all open years,[20] and thus the contention that these enterprises are not partnerships presents an alternate theory of refund. Whether a partnership exists is an issue of fact, *see, e. g., Commissioner v. Culbertson,* 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659 (1949), and we normally remand factual issues to our trial division for a report by a trial judge. Thereafter, if a party excepts to the report, we review the report including findings of fact completely. *Compare Commonwealth of Pennsylvania, Department of Transportation v. United States,* 226 Ct.Cl. ——, ——, 643 F.2d 758, 767, *cert. denied,* —— U.S. ——, 102 S.Ct. 117, 70 L.Ed.2d 101 (1981) (trial judge's recommended fact findings concurred in by the court after review of the record) with. *Montgomery Coca-Cola, supra,* court is free to reject the trial judge's recommended fact findings and make its own findings from the record). A remand, however, is not appropriate here. A careful review of the refund claims filed with the IRS discloses that plaintiffs did not raise this issue administratively. It has long been settled that to the extent refund petitions in this court state theories at variance with those presented to the IRS, the added theories must be disregarded. *E. g., Union Pacific R. R. v. United States,* 182 Ct.Cl. 103, 113–114, 117, 389 F.2d 437, 444–445, 447 (1968), *cert. denied,* 395 U.S. 944, 89 S.Ct. 2017, 23 L.Ed.2d 462 (1969). *See Disabled American Veterans v. United States,* —— Ct.Cl. ——, 650 F.2d 1178 at 1179–1180 (1981). Plaintiffs concede they did not expressly present this theory to the IRS but

---

**19.** *Boyle v. United States,* 355 F.2d 233 (3d Cir. 1965), on which plaintiffs rely, is not to the contrary. That case presents a classic application of recoupment, as dividend arrearages were included improperly within an estate, and thereafter, when the estate return had closed, were included again as income to the benefici-

aries when the arrearages were paid. Such a double inclusion, of course, is what occurred in *Bull v. United States, supra.*

**20.** I.R.C. § 6511, *supra* note 12, would for example bar Jerome's and Edward's claims for 1964 and related carryback years.

argue that the claims' general language places the IRS on notice of the theory. These refund claims do *inter alia* make reference to an "inherited" basis leading to greater depreciation. At best, those are oblique references which require the IRS to supply most of the substantive theory. That, of course, assumes the IRS identifies the reference as stating an alternate theory rather than misstating the major theory, greater depreciation deductions attributable to an I.R.C. § 743(b) adjustment. Supplying substantive theory, of course, is presumably what plaintiffs' tax advisers were retained to do; and given the ease with which plaintiffs might have raised the partnership issue, we will not require the IRS to provide plaintiffs tax counsel. See *Union Pacific R. R., supra* 182 Ct.Cl. at 113–114, 389 F.2d at 444–445. Moreover, we are not unmindful that these enterprises had long represented themselves in their tax returns and their financial statements to be partnerships. We need not decide today whether these plaintiffs should thereby be estopped to deny partnership status. *Compare Phillips v. United States*, 193 F.2d 132 (5th Cir. 1951) (partner estopped to deny status) *with Powell v. Commissioner*, 26 T.C.M. 161 (1967) ("partner" not estopped). An examining agent could reasonably have assumed in light of these long-standing and consistent representations that plaintiffs would not, in the absence of language clearly expressing otherwise, be contesting whether these were partnerships. As we hold the IRS to have had no notice of these claims, it follows that plaintiffs may not raise the issue now. There are thus no issues of material fact which preclude partial summary judgment.

Based on the foregoing, we conclude that defendant's motions for partial summary judgment should be and are hereby granted with the petitions dismissed to that extent. Plaintiffs' cross motions for partial summary judgment should be and are hereby denied. The matter is remanded to the trial division for further proceedings consistent with this opinion.