Samuel T. GINDES and Joan L. Gindes, et al., Appellants,

v.

The UNITED STATES, Appellee.

Appeal No. 84–700.

United States Court of Appeals, Federal Circuit.

Aug. 8, 1984.

---

5. Taxpayer relies heavily on the Tax Court's opinions in *Roccaforte v. Commissioner,* 77 T.C. 263 (1981), rev'd 708 F.2d 986 (5th Cir.1983) and *Ourisman v. Commissioner,* 82 T.C. 171 (1984). However, in both those cases taxpayers made certain that all creditors were aware of the agency relationship and that the partners were personally liable on the mortgage notes.

Werner Strupp, Washington, D.C., argued for appellants.

George L. Hastings, Jr., Washington, D.C., argued for appellee. With him on the brief were Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Richard Farber, Washington, D.C.

Before FRIEDMAN and RICH, Circuit Judges, and NICHOLS, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a judgment of the United States Claims Court insofar as that judgment failed to grant the appellants recovery on certain tax refund claims. The judgment was in accord with the prior decision of the Court of Claims that granted summary judgment for the United States on those claims. *Gindes v. United States*, 228 Ct.Cl. 632, 661 F.2d 194 (1981). In this appeal the appellants seek to relitigate the identical issues that that decision resolved against them. We hold that the prior decision of the Court of Claims is the law of the case, and affirm.

I

The will of Charles I. Kaplan, who died in June 1964, created a number of trusts for the benefit of his wife and children. (The appellants here are the children.) The corpus of each trust consisted of interests Mr. Kaplan had upon his death in 19 real estate partnerships. With minor exceptions here irrelevant, the assets of those partnerships consisted of real property upon which substantial depreciation had been taken in the federal partnership tax returns.

The federal estate tax return of Charles Kaplan was filed in April 1965. The Commissioner assessed a deficiency, ruling that the gross estate also included the interests in certain of those partnerships that Charles Kaplan had transferred to inter vivos trusts before his death. The estate challenged in the United States Tax Court the assessment of that deficiency and also another deficiency resulting from the Commissioner's redetermination of the value of the decedent's interest in one of the partnerships. The Tax Court suit was settled in 1969 when the government accepted the estate's valuation of the partnership and the estate accepted the Commissioner's inclusion in the gross estate of the partnership interest transferred to the inter vivos trusts.

Following and apparently as a result of the settlement of the Tax Court case, the appellants became aware that if the partnerships made an "election" under section 754 of the Internal Revenue Code of 1954, 26 U.S.C. § 754 (1982), the basis of the partnership property could be adjusted to reflect the transfer of Mr. Kaplan's interests in the partnership property from him to the trusts. The result would have been to increase the amount of depreciation the partnerships could take. The partnerships could pass the additional depreciation to the trusts, and the trusts could pass the larger depreciation to the beneficiaries, the appellants, for use on their personal income tax returns.

Nine of the partnerships filed elections under section 754 with their partnership returns for 1969. The appellants filed refund claims for other partnerships for various years between 1961 and 1970. The Commissioner denied the refund claims. The appellants then filed the present suit for refund in the Court of Claims.

Both sides moved for summary judgment. In a lengthy opinion, the Court of Claims granted the government partial summary judgment. With respect to the issues before us, the court held that the partnership elections under section 754 were ineffective because untimely filed under Treasury Regulation 1.754–1(b)(1). That regulation, promulgated in 1972, requires that the partnership make the section 754 election "with the partnership return for the taxable year during which the distribution or transfer occurs." Treas. Reg. § 1.754–1(b)(1) (1984). The court held that since the transfer to the trusts of Charles Kaplan's interests in the partnerships took place upon his death in 1965, any effective election by the partnerships was required to have been made in the partnership returns for that year, and that the appellants' attempts to make an election in 1969 were ineffective.

The court ruled that Treasury Regulation 1.754–1(b)(1) properly was applied retroactively to the 1965 transfers. It rejected the appellants' claim that the doctrine of equitable recoupment entitled them to avoid the time bar of the regulation. Finally, the court held that the appellants were precluded from arguing that the partnerships were not in fact partnerships because they failed to raise that point in their claim for refund with the Commissioner.

The court remanded the case to the trial division for further proceedings consistent with its opinion. The court denied rehearing and a suggestion for rehearing en banc. *See* 228 Ct.Cl. 632, 661 F.2d 194.

On October 1, 1982, the Court of Claims ceased to exist. Its appellate functions were assumed by this court, and its trial functions were assumed by the newly created United States Claims Court. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982). Under that Act, the Claims Court obtained jurisdiction over the remaining issues in this case. *Id.* § 403(d), 96 Stat. at 58.

The parties settled those issues. On October 27, 1983, the Claims Court entered a judgment in accordance with that settlement, determining the amounts the appellants were to recover. The present appeal is from that judgment.

The appellants presumably challenge that judgment for its failure to rule in their favor on the issues on which the Court of Claims had granted summary judgment for the United States. We assume *arguendo* that the appellants may do so, despite the determination in the prior decision that the petitions were "dismissed to [the] extent" that the government's motion for partial summary judgment was granted. 661 F.2d at 203.

## II

A. "The doctrine of law of the case 'expresses the practice of courts generally to refuse to reopen what has been decided.' *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). Thus, 'once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.' *Schwartz v. NMS Industries, Inc.,* 575 F.2d 553, 554 (5th Cir.1978)." *United States v. Turtle Mountain Band of Chippewa Indians,* 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979). The doctrine rests upon the important public policy that "[n]o litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *Id.* "The purpose of the law-of-the-case principle is to provide finality of judicial decisions." *Id.* 612 F.2d at 521; *see also Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 634 F.2d 557, 561–62 (1980).

This court treats the decisions of its two predecessor courts as binding precedents. *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982). Although the prior decision of the Court of Claims in this case was not rendered in an appeal, we nevertheless conclude that, considering all the circumstances, it is appropriate to treat that decision as the law of the case.

The Court of Claims functioned in both a trial and an appellate capacity. Cases in that court were tried before its trial division of judges appointed by the court. The trial judges rendered only recommended decisions, which the court then reviewed in substantially the same way that we now review decisions of the Claims Court.

The Court of Claims also functioned as an appellate tribunal in reviewing decisions of various administrative agencies such as the Indian Claims Commission and the Boards of Contract Appeals. Finally, the court decided a substantial number of cases by ruling on dispositive motions, such as the motions for partial summary judgment involved in the prior decision in this case. The court normally decided those cases after full briefing and oral argument, as it did here. *See Gindes,* 661 F.2d at 195.

The decisions the Court of Claims rendered on dispositive motions that decided the case are sufficiently analogous to decisions rendered on appeal to justify treating them as the law of the case. This conclusion accords with and serves the policies underlying that doctrine set forth above. The appellants give no convincing reason why the law-of-the-case doctrine should not be applied here, other than the technical and unconvincing point that the prior decision was rendered not on an appeal, but on cross-motions for summary judgment under the unique procedure the Court of Claims followed in deciding legal issues in cases involving no material factual disputes. Indeed, the Court of Claims described the law of the case as the rule that "a decision by the court on a point in a case becomes the law of the case unless or until it is reversed or modified by a higher court." *Raylaine Worsteds, Inc. v. United States,* 146 F.Supp. 723, 726 (1956).

B. Although law of the case "is not an inexorable command" (*White v. Murtha, supra,* 377 F.2d [428] at 431 [5th Cir.1967]), as a matter of sound judicial practice, a court generally adheres to a decision in a prior appeal in the same case unless one of three "exceptional circumstances" exists: "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Id.* at 432. *Turtle Mountain Band,* 612 F.2d at 521.

The appellants argue that their case comes within the third exception because the prior decision "was clearly erroneous and would work a manifest injustice." "The standard under this exception is a stringent one.... A mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point. Only if we were convinced to a certainty that our prior decision was incorrect would we be warranted in now reexamining [it]." *Northern Helex,* 634 F.2d at 562 (citation omitted).

The appellants have not made the "strong showing of clear error [that] is required before a court should reexamine its decision in the prior appeal." *Turtle Mountain Band,* 612 F.2d at 521. As the appellants admitted at oral argument, all of the contentions they now make were made when the case previously was before the Court of Claims on the identical issues. That court carefully considered and rejected those arguments. This is an important reason for applying law of the case. As the Court of Claims explained in *Northern Helex,* in language equally applicable here:

Our lengthy and detailed opinion in that case addressed the plaintiff's material arguments and explained why we rejected them. The plaintiff has not presented any new arguments that were not fully canvassed and evaluated before, nor placed the issues in a different context that provides insights and illuminations not previously available.

634 F.2d at 562.

Here, as in *Northern Helex,* "[w]e have no reason not to treat that earlier decision as the law of the case." *Id.*

The judgment of the United States Claims Court is affirmed.

AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring.

The appellant here had the curious idea that the appeal it took to us was an appeal not only from the Claims Court decision, but also from the decision by the panel in *Gindes v. United States*, 228 Ct.Cl. 632, 661 F.2d 194 (1981). This idea was contrary to the basic structure of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, which clearly regarded the court to be superseded, the Court of Claims, as having both appellate and trial functions. Decisions in performance of appellate functions were not intended to be subject to appellate review by the new court. By the rules of the old Court of Claims, whether a function was appellate depended on whether the appellate division performed it. Cross-motions for summary judgment were frequently the medium for appellate review, as for example in "Wunderlich" contract cases. Ct.Cl.Rules 161–166. Even when, as in tax cases, this was not so stated, the appellate status of an appellate division decision on a tax matter is clearly evident in the fact that the law provided no other appellate review.

When this court decided in *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir. 1982) that it would treat *all* Court of Claims appellate division decisions as binding precedents, this necessarily was a holding that this court would not sit in appellate review on *any* Court of Claims appellate division decisions. If it is a binding precedent, it hardly needs the Law of the Case doctrine to immunize it from the kind of reexamination this appellant wanted us to make. Even should we think the Court of Claims decision "was clearly erroneous and would work a manifest injustice," it would seem we could act on this view only by recommending an *en banc* review under our rules.

Appellant also argued that there was a clear error and manifest injustice in applying Treasury Regulation § 1.754–1(b) retroactively to a transfer, antedating the regulation date, 1972. Unless those concerned with the transfer were endowed with second sight, they could not comply with procedure not yet spelled out in the regulations, it was argued. However, the predecessor 1956 version of the regulation stated that the election in question must be made with the tax return for the "first taxable year to which the election applies." The statute required at all relevant times that the Secretary should prescribe by regulation how the election should be exercised. As the regulation of 1956, however ambiguous, at least notified the taxpayer he had to meet a deadline he did not meet to make an effective election, the retroactivity argument is a weak one and the former decision is not clearly erroneous or such as would cause a "manifest injustice." The court perhaps might have gone the other way, but it considered the arguments and made its reasoned decision which had to be one way or the other. It is just not the kind of case to justify substituting one set of judges' views for those of another set.