940 F.2d 678
 37 Cont.Cas.Fed. (CCH) 76,160
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
C.M. MOORE DIVISION K.S.H., INC., Appellant,
v.
The UNITED STATES, Appellee.
 No. 91-1056.
 United States Court of Appeals, Federal Circuit.
 July 26, 1991.
 
 Before ARCHER, Circuit Judge, COWEN, Senior Circuit Judge, and MAYER, Circuit Judge.
 DECISION
 COWEN, Senior Circuit Judge.
 
 
 1
 The appellant (Moore) appeals from the quantum decision of the Postal Service Board of Contract Appeals (Board), which granted Moore recovery in the amount of $2,978.77 on its certified claim of $494,007.98 against the United States Postal Service (Postal Service or agency) for breach of contract. The Board also granted the Postal Service recovery for the difference between the sum of $56,184.01 which the contracting officer had paid Moore and the $2,987.77 awarded Moore by the Board. C.M. Moore Division K.S.H., Inc., PSBCA No. 2208, 90-3 BCA p 23,174, July 30, 1990, (hereinafter, "Moore II "). We reverse-in-part, affirm-in-part, and remand the case to the Board for further proceedings in accordance with this opinion.
 
 OPINION
 
 2
 * Background
 
 
 3
 On February 20, 1981, Moore and the Postal Service entered into a contract for the production of plastic letter trays, using injection molds to be furnished by the Postal Service. Initially, the Postal Service furnished Moore with three 2933 molds and later, at Moore's request, the Service supplied three 3051 molds. The Postal Service was aware that Moore planned to use standard size 450- and 500-ton molding machines to perform the contract. Moore encountered substantial production difficulties in using the molds furnished by the Postal Service and at the completion of the contract, filed a claim for breach of contract with the contracting officer. In the initial appeal from his decision, the Board rendered its entitlement decision, C.M. Moore Division K.S.H., Inc., PSBCA No. 1131, 85-2 BCA p 18,110, May 14, 1985, aff'd on recon., 86-1 BCA p 18,573, Nov. 25, 1985, aff'd, 818 F.2d 874 (Fed.Cir.1987), (hereinafter Moore I ).
 
 
 4
 In Moore I, the Board held that the contractor would be entitled to recover damages, if proved, because of the following:
 
 
 5
 (1) The Postal Service's failure to disclose its superior knowledge that unless modified, the molds furnished by the agency would cause production problems, and (2) the agency's failure to disclose its special knowledge that the trays which it proposed to furnish had an inherent design deficiency which caused bottom warpage and tray rejection.
 
 II
 The Unmodified Mold Issue
 
 6
 There is a sharp dispute between the parties regarding the correct interpretation of the Board's entitlement (Moore I ) decision. We rely on the Board's statement (A71) that its holding regarding superior knowledge is based on its Findings 41-48 in Moore I. We summarize those findings deemed most pertinent to the issue:
 
 
 7
 1. On July 23, 1980, the Postal Service observed a molding trial run by Manton Industries (Manton), a contractor who was then undertaking to perform a similar contract for the manufacture of plastic trays, and as a result, the Postal Service concluded that the 500-ton molding machine used by Manton did not have sufficient clamping pressure. (A37, F.O.F. 42).[1]
 
 
 8
 2. On September 10, 1980, Manton submitted a proposal to modify the molds furnished by the agency by adding ejectors on the stationary half and spring loading the core. He had already modified two of the 3051 molds on his own initiative. (A38, F.O.F. 43.)
 
 
 9
 3. In an internal memorandum of November 3, 1980, the Postal Service's Research and Development Laboratories concluded that the 500-ton molding machine used by Manton was inadequate for manufacturing the trays and caused release and stability problems, extending cycle time; that while Manton's machine might require modifications, these would not be necessary for machines with a 750-or 1000-ton clamping pressure. It was also recommended that the Postal Service should not contract for any further work on the molds, but should make future bidders responsible for any modifications or refurbishment which would be necessary to produce acceptable trays, since these bidders would be given the opportunity to inspect the molds before bidding. Therefore, the Postal Service made no modification of any of the molds. (A38-39, F.O.F. 44).
 
 
 10
 4. Before awarding the contract, the Postal Service knew that Moore intended to use two molding machines with clamping pressures of 450- and 500-tons, but the Service did not disclose the agency's prior knowledge that the machines which Moore intended to use were inadequate for molding the trays without the modifications proposed by Manton. (A39-40, F.O.F. 46).
 
 
 11
 5. Moore's 450- and 500-ton machines were standard machines for molding the trays, but based on the Postal Service's own observations and conclusions, the Board found that Moore's use of these small machines may have caused release and stability problems which would not have been present with a larger machine. (A39-40, F.O.F. 46-47).
 
 
 12
 Based on these findings the Board concluded that:
 
 
 13
 Respondent was aware, before awarding the subject contract that Appellant planned on using 450- and 500-ton molding machines and contemplated a 60-second cycle time. However, despite a concern that Appellant had underbid, it did not disclose its knowledge that, without modification, use of the 2933 molds on these machines could be expected to cause stability and release problems, extending cycle time (F.O.F. 9, 10, 45, and 47, supra ).
 
 
 14
 We conclude that these facts conform to the elements of "superior knowledge" set forth in section C of this decision. Considered as a whole, the record reflects that Respondent possessed special information not reasonably available to Appellant other than through disclosure. (A60.)
 
 
 15
 In applying its entitlement decision to its quantum decision, the Board ignored material and important findings made by a preceding board in Moore I and limited the Postal Service's liability by holding that the superior knowledge withheld by the Postal Service consisted only of the modification to the molds proposed by Manton in its letter of September 10, 1980. We agree with Moore that the Board thereby committed reversible error, which resulted in the Board's decision that Moore was entitled to recover nothing on this portion of its claim.
 
 
 16
 The superior knowledge which the Postal Service failed to disclose was not only the specific mold modifications proposed by Manton. Rather, the critical superior knowledge withheld by the Postal Service was the plain need for modifications if the molds were to be used in connection with the 450- and 500-ton machines, and the fact that there would be no need to modify the molds if the larger 750-ton machines were used to produce the trays. Moore successfully used a 750-ton machine in manufacturing the trays during the period from February 1982 to June 30, 1982, when the contract was completed.
 
 
 17
 In view of the Board's heavy reliance in Moore II on the modifications proposed by Manton, it is significant that it has been established as a fact that if Moore had been informed of and had used the Manton specifications, they would have done little to lessen the production problems Moore encountered in manufacturing the trays with the 450- and 500-ton machines used during most of the performance period. During the evidentiary hearing on quantum, the parties stipulated the following:
 
 
 18
 "mold modifications proposed by Manton Industries on September 10, 1980 * * *, if disclosed to appellant at the time of the contract award would not have significantly improved cycle times or reject rates achieved by appellant on its 450- and 500-ton machines."
 
 
 19
 In Moore I, the Board found that some additional costs may have been incurred by Moore through the use of the unmodified molds. However, the Board stated that in establishing quantum, Moore would have the burden of identifying the extra effort required because of the unmodified molds, separately from other contributing factors. In attempting to comply with the Board's ruling on quantum, Moore introduced substantial evidence with respect to the extra effort required, the delays encountered, and the expenses incurred in using the Postal Service molds on the 450- and 500-ton machines as compared with the improved production efficiency which resulted from Moore's use of a 750-ton machine. However, in its quantum decision, the Board adopted the contention of the Postal Service that Moore's damages should be based on a comparison between Moore's experience with its 450- and 500-ton machines and the results it would have achieved had Moore been informed of and utilized the modification proposed by Manton in the letter of September 10, 1980. (All.) The Board then seized on the statement in the stipulation quoted above and on that basis, concluded that the absence of the Manton modification did not cause Moore to incur any additional costs, and therefore, that Moore was entitled to recover nothing on the claim.
 
 
 20
 We hold that the Board's quantum decision was arbitrary and capricious within the meaning of 41 U.S.C. Sec. 609(b) 1988. Moore II was issued after a five-day hearing in which Moore and the Postal Service completed their proofs on the issue of the amount Moore would be entitled to recover on the basis of the measure of damages, which a differently constituted board had established in Moore I. By adopting a new and entirely different measure of damages after the parties had closed proof on the issue, the Board in Moore II effectively deprived Moore of its right to recover any damages it had actually incurred because of the Postal Service's failure to disclose its superior knowledge regarding the unmodified molds.
 
 
 21
 We reject the government's argument that since we affirmed Moore I, the law of the case doctrine requires us to approve and affirm the Board's quantum decision on the measure of damages and its resulting finding that Moore was entitled to recover nothing on its claim. The law of the case doctrine applies to a reconsideration of issues decided by the court at an earlier stage of the litigation. Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc., 761 F.2d 649, 657 (Fed.Cir.1985); Gindes v. United States, 740 F.2d 947, 949 (Fed.Cir.1984). To the extent that the doctrine is applicable in this appeal, it applies to the issues decided in Moore I, which was affirmed by this court, rather than to Moore II, decided some five years later by a differently constituted board, which did not adhere to the measure of damages established in Moore I. A comparison of the pertinent statements in Moore I (A61) with those in Moore II (A12, 13) shows that in Moore II, the Board adopted an entirely different measure of damages and one which had never been reviewed or considered by this court until it was raised as an issue in this appeal.
 
 
 22
 For the reasons we set forth above, we conclude that the Postal Service breached its contract with Moore by failing to disclose its superior knowledge regarding the unmodified molds which the Postal Service furnished Moore for the production of the trays. Moore is entitled to recover the additional costs it incurred because of the Postal Service's failure to disclose its special knowledge of facts which were vital to the performance of the contract and unknown to Moore. Hardeman-Monier-Hutcherson v. United States, 458 F.2d 1364, 1371-72 (Ct.Cl.1972); Helene Curtis Indus., Inc., v. United States, 312 F.2d 774, 778 (Ct.Cl.1963).
 
 
 23
 Therefore, the Board's quantum decision is reversed and the case is remanded with instructions to determine the damages which Moore may be entitled to recover as a result of the breach. In making that determination, the Board shall apply the measure of damages set forth in its entitlement decision (A61). This is required by the law of the case doctrine. In view of the state of the record, the Board shall, on remand, permit either party to offer any additional relevant evidence which it may desire to present on the issue of damages.
 
 III
 The Tray Warpage Issue
 
 24
 During contract performance, the Postal Service rejected a number of trays molded by Moore because of bowed bottoms. Ultimately, the Postal Service granted Moore a tolerance variance for bottom flatness (A40, F.O.F. 48). In Moore I, the Board found that prior to the time the contract was entered into, the Postal Service had special knowledge that the bottom tray warpage was due to a deficiency in the original tray design but never disclosed this information to Moore. Accordingly, the Board held that Moore was entitled to recover any additional costs incurred because of warpage due to the design deficiency of the trays, separately from costs due to other causes (A65). In Moore II, the Board found that the only persuasive evidence of Moore's costs which were associated with the design defect was the cost of replacing the rejected trays. On that basis, the Board held that Moore was entitled to recover the sum of $2978.77.
 
 
 25
 The only question to be resolved in this appeal is whether Moore has shown grounds for disturbing the Board's finding on the amount awarded Moore on this portion of its claim. We have reviewed the administrative record and conclude that Moore has failed to show that the Board's decision on the amount of the recovery is not supported by substantial evidence, or that it is incorrect as a matter of law. Therefore, the Board's decision is entitled to finality, and its decision on this issue is affirmed.
 
 COSTS
 
 26
 Each party shall bear its own costs.
 
 
 
 [1]
 "A" refers to the joint appendix filed by the parties and F.O.F. refers to the Board's findings of fact